IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00065-MSK-KLM

CORVAX OIL AND GAS LAND SERVICES, LLC, a Utah limited liability company,

    Plaintiff,

v.

GLORIA JAMESON,
NORMAN BROWN and RUTH BROWN, as joint tenants,
FRANKLIN D. BAYLESS and STEVEN H. BAYLESS, as joint tenants,
DUANE N. BROWN and JANICE BROWN,
ROBB S. HARRIS,
NORMAN A. MONK, JR.,
NOCO OIL COMPANY, INC.,
DIAMOND OPERATING, INC.,
JOHN S. GIBSON PRODUCTION, LLC,
FLATIRON ENERGY COMPANY, INC.,
JOHN SCOTT GIBSON,
DAVID C. PETERSON,
BOULDER OIL COMPANY, INC.,
MADDON OIL PROPERTIES, INC.,
VIS-OP OIL COMPANY,
MARSHALL L. FRASIER,
LONE TREE OIL & GAS COMPANY,
CALLISTO ENERGY, LLC,
CONTINENTAL RESOURCES,
ROBERT D. PULSON & CO.,
P & O ENERGY, LLC,
BOULDER OIL COMPANY, LP, and
BILL D. MADDOX,

    Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on a **Motion to Dismiss under Fed. R. Civ. P.**

**12(b)(1) and 12(b)(7)** [Docket No. 21; Filed February 28, 2013] (the "Motion") filed by Defendants Diamond Operating, Inc.; John S. Gibson Production, LLC; Flatiron Energy Company, Inc.; John Scott Gibson; David C. Peterson; Vis-Op Oil Company; Lonetree Oil & Gas Company; and Robert D. Pulson & Co. (collectively the "Diamond Defendants"), joined by Defendants Maddox Oil Properties, Inc.; P & O Energy, LLC; and Bill J. Maddox; and a **Motion for Joinder in Defendants' Motion to Dismiss** [Docket No. 31; Filed March 3, 2013] (the "Joinder Motion," collectively with the Motion, the "Motions") filed by Defendant Callisto Energy, LLC ("Callisto").   On March 19, Defendant Continental Resources ("CLR") filed a Response to the Motion [#34] ("CLR Response").   On March 22, 2013, Plaintiff also filed a Response [#36].   On April 3, 2013, Diamond Defendants filed a Reply, joined by Defendant Callisto [#42].   The Motions are ripe for review.   Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.L.Civ.R. 72.1.C., the Motions have been referred to this Court for recommendation [#28, #32].   The Court has reviewed the Motions, the CLR Response, Plaintiff's Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises.   For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#21] be **GRANTED**, that Defendant Callisto's Motion for Joinder [#31] be **GRANTED**, and that Plaintiff's Complaint [#1] be **DISMISSED without prejudice.**

## I.  Background

This is a quiet title action involving oil and gas leases on "certain properties located in the Keota Field, Weld County, Colorado."   *Compl.* [#1] ¶ 4.   The properties are more particularly identified as: "Township 9 North, Range 61 West, 6th P.M.[;] Section 4: Lot 3,

Lot 4 and S/2NW/4 (a/k/a NW/4), S/2[;] Section 8: E/2[; and] Section 9: NW/4, SE/4" (the

"Subject Property").  *Id.*  Plaintiff claims its title in the Subject Property "arises out of and

pertains to an Oil and Gas Lease dated February 14, 1951 from Don T. Gillette and Miles

T. Gillette, as Lessors, to Melvin Condron and Ralph Peterson, as Lessee, recorded on

September 7, 1951 in Book 1311 at page 343 of the records of the Clerk and Record of

Weld County, Colorado" (the "Gillette Lease").  *Compl.* [#1] ¶ 6.  Plaintiff seeks a quiet title

decree stating that Plaintiff owns all leasehold rights to oil and gas on the Subject Property,

a declaratory judgment stating that Plaintiff owns 100% of the leasehold interest in the

Gillette Lease, and monetary damages on Plaintiff's claims for trespass and conversion.

*Id.*  Plaintiff asserts in its Complaint that this Court has diversity jurisdiction pursuant to 28

U.S.C. §1332(a).  *Id.* ¶ 3.

     Plaintiff, Corvax Oil and Gas Land Services, LLC ("Corvax"), is a limited liability

company ("LLC").  Plaintiff failed to allege the citizenship of its members in its Complaint,

but attached exhibits to its Response alleging that its two members, Robert McCormick ("R.

McCormick") and Evelyn, or Lyn McCormick ("E. McCormick"), are citizens of Louisiana

and Utah respectively.  *See Pltf. Ex. A, Aff. of R. McCormick* [#36-1] at 2; *Pltf. Ex. B, Aff.*

*of E. McCormick*  [#36-2] at 2.  Neither Plaintiff's Complaint nor Response makes any

allegations about the citizenship of any Defendant, except to claim that "Defendants are all

residents, corporations, or limited liability companies from states other than Louisiana and

Utah." *Compl.* [#1] ¶ 2.

      In response to the Complaint, Diamond Defendants argue in their Motion that

Plaintiff has failed to sufficiently allege facts supporting the exercise of diversity jurisdiction

over this case, and that even if diversity jurisdiction were proper, the case should be

3

dismissed for failure to join necessary parties pursuant to Fed. R. Civ. P. 19. *Motion* [#21] at 1-2.  Defendant Callisto joined Diamond Defendants' motion to dismiss. *Joinder Motion* [#31] at 2.  Defendant CLR, in its Response, suggests that although Plaintiff has failed to adequately plead facts supporting diversity jurisdiction pursuant to 28 U.S.C. § 1332, this Court may nevertheless have jurisdiction over this case pursuant to 28 U.S.C. § 1334(b), which grants federal district courts original jurisdiction over civil proceedings "related to" bankruptcy cases. *CLR Resp.* [#34] at 1.  Plaintiff responds by arguing that its allegation that no Defendant is a citizen of Louisiana or Utah is sufficient to establish subject matter jurisdiction, and that "Plaintiff has diligently examined record title interests and has joined everyone that it appears from the record owns a current interest in the properties or received proceeds that properly belong to Plaintiff." *Resp.* [#36] at 4.  Plaintiff further notes, though explicitly declining to plead as much, that even if it cannot satisfy its burden of pleading diversity jurisdiction, R. McCormick, a member of Plaintiff, could have removed this action from state to federal court pursuant to 28 U.S.C. § 1452 had it been filed in state court initially. *Id.* at 2.  Section 1452 provides for a party to "remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  28 U.S.C. § 1452(a).

## II.  Standard of Review

### A.      Rule 12(b)(1)

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have

a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). "Statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "It is to be presumed that a cause lies outside this limited jurisdiction . . . , and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

Subject matter jurisdiction may be challenged by a party or raised *sua sponte* by the Court at any point in the proceeding. *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3). A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of jurisdiction contained in the complaint as insufficient on their face to demonstrate the existence of jurisdiction ("facial attack"), or may be made as a "speaking motion" attacking the factual existence of subject matter jurisdiction ("factual attack"). *See Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1947); *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995); *accord Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt*, 46 F.3d at 1002. By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts on which subject matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed

5

jurisdictional facts in a factual attack, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).   The Court's reliance on "evidence beyond the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56.  *Id.* (citing *Wheeler*, 825 F.2d at 259 n.5).

**B.     12(b)(7)**

Rule 12(b)(7) allows for the dismissal of a case if a party fails to join a required party pursuant to Rule 19 of the Federal Rules of Civil Procedure.  In order to dismiss the case pursuant to Rule 12(b)(7), the Court must find that: (1) the missing parties are required persons pursuant to Rule 19(a), (2) joinder of the parties is infeasible pursuant to Rule 19(b), and (3) dismissal is appropriate. Fed. R. Civ. P. 19; *Davis v. United States*, 343 F.3d 1282, 1288 (10th Cir. 2003).[1] The party moving for dismissal bears the burden of showing that the missing parties are necessary and indispensable persons. *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).

To determine whether the  missing parties are "required" persons, the Court must first consider: (1) whether complete relief would be available to the parties already in the suit, (2) whether the absent persons have an interest related to the suit which, as a

---

[1] Rule 19 was amended in 2007 for stylistic purposes only.  *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 855-56 (2008); Adv. Comm. Notes on the 2007 Amendment to Fed. R. Civ. P. 19 (2007).  The previous rule referred to "necessary" persons in 19(a), which are now called "required" persons, and "indispensable" persons in 19(b), persons the rule now generally refers to as those required to be joined if feasible but who cannot be joined.  *See id.*

6

practical matter, would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations if the suit proceeds without the absent parties.  Fed. R. Civ. P. 19(a); *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1410 (10th Cir. 1996).

### III.  Analysis

### A.    Dismissal Pursuant to Rule 12(b)(1) For Lack of Subject Matter Jurisdiction

The Court first considers whether it has subject matter jurisdiction over Plaintiff's claims.  *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo. March 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").  The party seeking the exercise of jurisdiction in its favor, here Plaintiff, "must allege in [its] pleading the facts essential to show jurisdiction."  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 1980).

### 1.     Diversity Jurisdiction Pursuant to 28 U.S.C. § 1332.

"Jurisdiction based on diversity of citizenship exists when a dispute between citizens of different states involves an amount in controversy exceeding $75,000."  *Lowell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (citing 28 U.S.C. § 1332(a)); *see City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941) (requiring that the matter be a "controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side" in order for the Court to have diversity jurisdiction) (citation omitted).  To determine whether a party has

7

presented facts sufficient to establish federal diversity jurisdiction, courts must look to the face of the complaint, *see Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), ignoring any mere conclusory allegations of jurisdiction, *see Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  Because Plaintiff asserts jurisdiction pursuant to 28 U.S.C. § 1332, Plaintiff must establish complete diversity and a proper amount in controversy in its pleadings.  *Compl.* [#1] ¶ 3.

Statutes conferring diversity jurisdiction are to be strictly construed.  *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Chase Nat'l Bank*, 314 U.S. at 76; *Healy v. Ratta*, 292 U.S. 263, 270 (1934); *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).  Therefore, when a plaintiff's claim of diversity is challenged, the plaintiff bears the burden of proving diversity.  *Thomson*, 315 U.S. at 446; *Crowley*, 710 F.2d at 678.  To meet this burden, the party asserting jurisdiction must establish with specificity the citizenship of all of the parties.  *See Karnes v. Boeing Co.*, 335 F.3d 1189, 1194 (10th Cir. 2003) ("Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction.") (internal quotation marks omitted); *Penteco Corp. Ltd. P'ship-1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (holding that plaintiff "must allege in his pleading the facts essential to show jurisdiction").

"The starting point for any analysis of who must be counted for purposes of diversity jurisdiction is *Strawbridge v. Curtiss*, 3 Cranch 267 (1806), in which the Court held that 'complete diversity' is required among 'citizens' of different States."  *Carden v. Arkoma Assocs.*, 494 U.S. 185, 199 (1990).  Thus, a case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete. *See Carden*, 494 U.S. at 187 (1990); *Strawbridge*, 3 Cranch 267; *Salt Lake Tribune Publ'g*

*Co. v. AT & T Corp.*, 320 F.3d 1081, 1095-96 (10th Cir. 2003). The presence of any nondiverse party automatically destroys original jurisdiction; no party need assert the defect, and no party may waive the defect or consent to jurisdiction. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *People's Bank v. Calhoun*, 102 U.S. 256, 260-261 (1880). If complete diversity is insufficiently alleged and no other basis for jurisdiction exists, the Court lacks the power to hear the case. *Laughlin*, 50 F.3d at 873-74.

Defendants in this case include multiple limited liability corporations, or LLCs. *Compl.* [#1] at 1. Although the Supreme Court and the Tenth Circuit have not ruled specifically on the issue of citizenship of LLCs, the consensus in this District and throughout the Circuit Courts of Appeal is that an LLC is deemed to be a citizen of all of the states of which its members are citizens.[2] For purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), state citizenship is the equivalent of domicile. *Williamson v. Osenton*, 232 U.S. 619, 624 (1914). Thus, to establish facts supporting diversity jurisdiction in this

---

[2] *See Gabler v. HA Hous., LP*, No.12-cv-02671-PAB-KMT, 2012 WL 4856734, at *2 (D. Colo. Oct. 12, 2012); *Smith v. Locher*, No. 10-cv-00999-MSK, 2010 WL 2342475, at *1 (D. Colo. June 8, 2010); *U.S. Advisor, LLC v. Berkshire Prop. Advisors*, No. 09-cv-00697-PAB-CBS, 2009 WL 2055206, at * 2 (D. Colo. July 10, 2009); *Hale v. MasterSoft Int'l Pty. Ltd.*, 93 F. Supp. 2d 1108, 1112 (D. Colo. 2000); *see also Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077 (5th Cir. 2008); *Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51 (1st Cir. 2006); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006); *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114 (4th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827 (8th Cir. 2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020 (11th Cir. 2004); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48 (2d Cir. 2000); *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir. 1998); *cf. Carden*, 494 U.S. at 195-96 (while not discussing LLCs in particular, noting that regarding other types of non-corporate entities, "[w]e adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members,'. . . 'the several persons composing such association,' . . . or 'each of its members'" (internal citations omitted)).

case, Plaintiff must allege the citizenship of the members of Plaintiff, each of the individual

Defendants, each of the corporate Defendants, and each of the partners or members of the

partnership of the LLC Defendants.   "Pleading where defendants are not citizens is

insufficient."  *Maher v. Marquez*, No. 12-cv-00220-PAB, 2012 U.S. Dist. LEXIS 15984, at

*1 (D. Colo. Feb. 7, 2012); *accord D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*,

661 F.3d 124, 126 (1st Cir. 2011) ("That Mr. Mehrotra is a citizen of Rhode Island and that

Zwirn is not considered a citizen of Rhode Island 'is not sufficient to give jurisdiction in a

. . . Court of the United States.'") (quoting *Cameron v. Hodges*, 127 U.S. 322, 324 (1888)).

Plaintiff alleges that "Defendants are all residents, corporations, or limited liability

companies from states other than Louisiana and Utah."  *Compl.* [#1] ¶ 2.  These allegations

are insufficient to invoke diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Even taking

Plaintiff's allegations as true, the allegation that Plaintiff is a citizen of Louisiana and Utah

and that Defendants are not "is not sufficient to give jurisdiction in a . . . Court of the United

States."  *Cameron*, 127 U.S. at 324 (1888).  In *Cameron*, the defendant was an Arkansas

citizen who sought to remove an action from a Tennessee state court.  *Id.* at 324-25.  He

attempted to invoke diversity jurisdiction by alleging  "that none of the complainants are or

were at that time citizens of said State of Arkansas."  *Id.* at 324.  The Supreme Court

reasoned that:

> [the fact that] the defendant . . . was a citizen of Arkansas, in connection with
> the fact that none of the complainants were citizens of that State, [was] not
> sufficient to give jurisdiction in a Circuit Court of the United States. . . . The
> adverse party must be a citizen of some other named State than Arkansas,
> or an alien. All the complainants might be residents and citizens of the
> District of Columbia, or of any Territory, and they might not be citizens of the
> State of Tennessee where the suit was brought, or indeed, of any State in the
> Union . . . .

*Id.* at 324-25.   The Court also noted that "[t]his court has always been very particular in requiring a distinct statement of the citizenship of the parties, and of the particular State in which it is claimed, in order to sustain the jurisdiction of those courts." *Id.* at 325.   Although the word "States" is now defined to include the Territories and the District of Columbia, *see* 28 U.S.C. § 1332(e), individuals, and thus the LLCs of which they are members, still might be citizens of no state at all pursuant to the diversity statute.   For instance, United States citizens who are domiciled abroad are citizens of no state, and their "'stateless' status destroy[s] complete diversity under § 1332(a)(3), and [their] United States citizenship destroy[s] complete diversity under § 1332(a)(2)." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989).   Additionally, Indian tribes are treated as stateless for purposes of the diversity statute. *See Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 27 (1st Cir. 2000).   Other entities are treated similarly. *See, e.g., Petroleum Exploration, Inc. v. Pub. Serv. Comm'n*, 304 U.S. 209, 217 (1938) (noting that states are not "citizens" for purposes of the diversity statute). If, therefore, any individual Defendant or member of a Defendant LLC is a stateless person, or an entity treated like a stateless person, the Court lacks diversity jurisdiction pursuant to 28 U.S.C. § 1332.

By failing to specifically identify the citizenship and name of each of its members and those of Defendants, Plaintiff fails to establish complete diversity. *See U.S. Advisor*, 2009 WL 2055206, at *2 ("The citizenship determination requires an exploration of the citizenship of the constituent entities as far down as necessary to unravel fully the citizenship of the entity before the court."); *Yates v. Portofino Real Estate Props. Co., LLC*, No. 08-cv-00324-PAB-MJW, 2009 WL 2588833, at *3 (D. Colo. Aug. 17, 2009) (finding that the plaintiffs' amended pleading should address the citizenship of each of the defendant's members,

without resorting merely to their "information and belief").  Despite Plaintiff's disclosures regarding its own citizenship, Plaintiff has not alleged the state of citizenship of any Defendant.  Because "[i]t is well-established that statutes conferring jurisdiction upon the federal courts . . . are to be narrowly construed in light of our constitutional role as limited tribunals," *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005), the Court cannot proceed pursuant to diversity jurisdiction without fully accounting for the citizenship of all of the parties.  Such an accounting has not occurred in the present case.  As a result, diversity jurisdiction is lacking.

### 2.      Jurisdiction Pursuant to 28 U.S.C. §§ 1334 and 1452

Defendant CLR suggests that the Court may have jurisdiction over this case because it may be a "related to" R. McCormick's bankruptcy proceeding in Louisiana.  *CLR Resp.* [#34] at 2.  Plaintiff's Response does not cite this basis for jurisdiction, but instead asserts that "[R.] McCormick has the right to move this case from state court to federal court at his election," citing 28 U.S.C. § 1452.  *Resp.* [#36] at 2.  Section 1452 allows a party to "remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  28 U.S.C. § 1452(a).  Plaintiff argues that it could have removed this suit to federal court pursuant to § 1452, presumably in an attempt to show that, regardless of the Court's finding on diversity jurisdiction, this case inevitably would have ended up in a federal court.[3]

---

[3]  The Court notes that this statute is inapplicable to the current case; because Plaintiff chose to file this suit in a federal district court, removal jurisdiction simply does not apply.  "It violates the plain language of 28 U.S.C. § 1452 to say that an action can be removed 'to district court' when it is already pending in district court, because the words 'to district court' by necessity

### a.    28 U.S.C. § 1334 and "Related To" Jurisdiction

Defendant CLR argues that although Plaintiff has failed to adequately plead facts supporting diversity jurisdiction, this Court may nevertheless have jurisdiction over this case pursuant to 28 U.S.C. § 1334(b).  *CLR Resp.* [#34] at 1.  Section 1334(b) establishes three subcategories of federal subject matter jurisdiction relating to bankruptcy proceedings which are referred to as § 1334(b) "arising under" jurisdiction, § 1334(b) "arising in" jurisdiction, and § 1334(b) "related to" jurisdiction.  *See In re Menk*, 241 B.R. 896, 905 (9th Cir. 1999).  A case or proceeding arises under title 11 if it "asserts a cause of action created by the [Bankruptcy] Code . . . ."  *In re Midgard Corp.*, 204 B.R. 764, 771 (10th Cir. 1997).  A proceeding arises in a case under title 11 if it is a proceeding that "could not exist outside of a bankruptcy case" and is not a cause of action created specifically by title 11.  *Id.*  Because the instant case neither arises under title 11, nor arises in a title 11 proceeding, the Court looks to the third subcategory to determine whether the instant case is related to bankruptcy proceedings.

A civil proceeding is "related to" a bankruptcy case if the outcome of that proceeding could affect the administration of the debtor's bankruptcy estate.  *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990); *Lackawaxen Telecomm., Inc. v. S. Canaan Cellular Equity, LLC*, No. 09-cv-00187-WDM-KLM, 2009 WL 903460, at *2 (D. Colo. Apr. 1, 2009) (finding that an action is related to a bankruptcy proceeding if it could alter the debtor's rights, liabilities, options, or freedom of action and in any way impacts the administration of the

---

involve the concept of bringing the action to district court from some other forum." *In re Mitchell*, 206 B.R. 204, 209 (Bankr. C.D. Cal. 1997).  However, since the analysis under 28 U.S.C. § 1452 includes at its threshold an analysis of original jurisdiction pursuant to 28 U.S.C § 1334, the Court will briefly conduct an analysis of this second basis for original jurisdiction.

bankrupt estate) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  However, "the existence of common issues of fact between a civil proceeding and a bankruptcy controversy does not automatically lead to federal jurisdiction over the civil matter."  *ADT Sec. Servs., Inc. v. Firstline Sec., Inc.*, No. 08-cv-00466-CMA-CBS, 2008 WL 5226376, at * 2 (D. Colo., Dec. 12, 2008) (citing *Pacor*, 743 F.2d at 994).

Defendant CLS argues that "related to" jurisdiction may exist in this case, as this case may be "related to" a proceeding titled *In re Robert S. McCormick*, Case No. 12-13473, Section "B", United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Proceeding").  *CLS Resp.* [#34] at 2-3.  R. McCormick, a member of Plaintiff, claims in the Bankruptcy Proceeding that his bankruptcy estate includes controlling interests in McCormick-Vaquero, LLC, and Corvax Land and Title Services, LLC, both of which purport to own 50% of a claim related to anticipated oil and gas production from the Keota Oil Field in Weld County, Colorado.  *Periodic Report Regarding Value, Operations and Profitability of Entities in Which the Estate of Robert S. McCormick Holds a Substantial or Controlling Interest ("R. McCormick Interests Report")* [#34-1] at 8, 40.[4]  Notably, Plaintiff is not mentioned in this report of R. McCormick's interests.  R. McCormick based his valuation of the claims allegedly held by these listed entities on, in part, "[t]hree horizontal

---

[4] Though the Subject Property in this suit is also located *in* the Keota Field in Weld County, Colorado, the Complaint explicitly notes which section and lot numbers are to be considered part of the "Subject Property."  *Compl.* [#1] ¶ 4.  It does not appear on the face of the record that the properties claimed as interests in the Bankruptcy Proceeding are so specifically identified.  *See R. McCormick Interests Report* [#34-1] at 8, 9, 40.  The contour map of the Keota Field provided in the Bankruptcy Proceeding seems to indicate multiple lots and oil drilling sites, though the Court is unable to identify on this map the Subject Property in this case.  *See id.* at 9.  Therefore, noting the possibility that the interests at issue in the Bankruptcy Proceeding may *overlap* with those related to the Subject Property, the Court hesitates to assume on the evidence available that they are *identical*.

14

wells [that] have been drilled on the oil field by Continental Resources at a cost of about $8,500,000 with [an] expected return of 6 to 1 on each investment." *Id.* Defendant CLS suggests that the interest claimed by R. McCormick, the debtor in the Bankruptcy Proceeding, may be "an interest in the Gillette Lease at issue here, or an alleged equitable interest in the subsequently obtained NOCO Oil leases that [Plaintiff] claims are invalid." *CLS Resp.* [#34] at 3 (citing *Compl.* [#1] ¶¶ 4, 13).

The Third Circuit in *Pacor*, 743 F.2d 984, devised the following test for determining the existence of "related to" jurisdiction:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* . . . . Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 994 (emphasis in original and citations omitted). The First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted the *Pacor* test with little or no variation. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (listing cases). The Court notes that R. McCormick is not a party to this action. *See Compl.* [#1] at 1. Additionally, Corvax, the sole plaintiff in this case, has been neither identified as being in bankruptcy nor listed as an entity owned by R. McCormick in his own bankruptcy filings. *See id.*; *R. McCormick Interests Report* [#34-1] at 1, 8, 40. Furthermore, Plaintiff has cited no precedent where a case filed by a non-bankrupt entity, partially owned by a bankrupt individual, has been held to be a case that is "related to" that individual's bankruptcy estate pursuant to 28 U.S.C. § 1334(b). Regardless, none of these factors speak directly to the

*Pacor* test adopted by the Tenth Circuit in *Gardner*, which requires neither certainty nor likelihood of an effect on a bankruptcy estate. 913 F.2d at 1518. "The test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could *conceivably have any effect on the estate being administered in bankruptcy.*" *Id.* (emphasis added). Nothing else is required. Additionally, the Supreme Court has stated that "proceedings 'related to' [a] bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) *suits between third parties which have an effect on the bankruptcy estate.*" *Celotex*, 514 U.S. at 308 n.5 (1995). It is conceivable that the interest claimed by R. McCormick in the Bankruptcy Proceeding may in fact involve either the Gillette Lease or the subsequently obtained NOCO Oil leases at issue here. *See Compl.* [#1] ¶¶ 4, 13 (describing the interest involved as leasehold in the Keota Field, Weld County and the subsequent leases obtained by NOCO Oil Co). In either case, the outcome of this litigation could conceivably affect the estate in the Bankruptcy Proceeding. *See R. McCormick Interests Report* [#34-1] at 8, 40.

### b.    Grounds for Abstention

The same statute granting federal jurisdiction over cases "related to" title 11 claims also provides that the district court may abstain from hearing such matters. 28 U.S.C. § 1334(c). In some cases, abstention is mandatory. 28 U.S.C. § 1334(c)(2). Alternatively, 28 U.S.C. § 1334(c)(1) provides for discretionary abstention "in the interest of justice, or in the interest of comity with State courts or respect for state law."

Section 1334(c)(1) is admittedly oblique in delineating criteria that would support a discretionary abstention, but nothing in this section prevents a district court, in the interest of justice, or in the interest of comity with state courts or respect for state law, from

16

abstaining from hearing a particular proceeding related to a case brought pursuant to title 11. 28 U.S.C. § 1334(c)(1); *see In re Pan Am. Corp.*, 950 F.2d 839, 845 (2d Cir. 1991). The statute speaks only in the most general terms of the "interest of justice," the "interest of comity," and "respect for State law." However, discretionary abstention pursuant to § 1334(c)(1) is "informed by principles developed under the judicial abstention doctrines, and courts have usually looked to these well-developed notions of judicial abstention when applying section 1334(c)(1)." *Pan Am.*, 950 F.2d at 845.

Here, Defendants have not moved for mandatory abstention. However, "it is appropriate to examine the elements of the mandatory abstention provision for guidance in exercising discretionary abstention under 28 U.S.C. § 1334(c)(1)." *In re Illinois-California Express, Inc.*, 50 B.R. 232, 241 (D. Colo. 1985); *see In re Counts*, 54 B.R. 730, 736 (D. Colo. 1985). Section 1334(c)(2) provides:

> [u]pon a timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under title 11 but not arising under title 11 . . . with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court *shall abstain* from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added). In short, the Court must abstain when the following six factors are present: (1) the motion to abstain was timely; (2) the action is based on state law; (3) an action has been commenced in state court; (4) the action can be timely adjudicated in state court; (5) there is no independent basis for federal jurisdiction other than bankruptcy; and (6) the matter is non-core, i.e., is merely related to and not arising under title 11. *See In re George Love Farming, LLC*, No. UT-08-094, 2010 Bankr. LEXIS 629, 19-21 (10th Cir. Mar. 9, 2010). Though no motion to abstain has been made,

Plaintiff's Complaint presents non-core issues based in state law, and the Court is unable to identify an independent basis for federal jurisdiction.  *See Compl.* [#1] at 4-6.  Diamond Defendants also present evidence that in 2011, R. McCormick filed an action in Weld County District Court, asserting many of the same claims asserted in this action.  *Reply* [#42] at 7; *Weld Cnty. Compl.* [#42-2] at 9.  Diamond Defendants further allege that the Weld County action was "dismissed on April 5, 2012, for failure to comply with or otherwise respond to the Court's Delay Prevention order."  *Reply* [#42] at 8 n.2.

"By requiring mandatory abstention, Congress has adopted a policy which clearly favors resolution of related state law causes of action in state courts." *In re Smith-Douglass, Inc.*, 43 B.R. 616, 618 (E.D.N.C. 1984).  Where most, but not all, of the criteria set forth by Congress for making the mandatory abstention decision are present, "it would thus be keeping with the policy Congress contemplated for this [C]ourt to abstain." *Illinois-California Express*, 50 B.R. at 241 (holding that where all requirements for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) were present, except criteria that proceeding be pending in state court, discretionary abstention was appropriate in order to respect state law and to allow state courts to interpret their own laws.); *see In re Counts*, 54 B.R. 730 (abstaining from hearing complaint pursuant to 28 U.S.C. § 1334(c)(1), in part because an identical complaint had been filed in Texas District Court and there was potential for needless duplication).  Therefore, "there is a strong inclination in favor of discretionary abstention where most of the requirements for mandatory abstention are present." *In re Rarick*, 132 B.R. 47, 52 (D. Colo. 1991).

In addition to the general standards outlined in § 1334(c)(1) and the factors identified in § 1334(c)(2), courts have developed a number of factors to aid in determining

18

whether discretionary abstention is appropriate.  Most pertinent to the case at hand, courts

consider:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues . . . (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case . . . (10) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties . . . [and] (12) the presence in the proceeding of nondebtor parties.

*In re Schempp Real Estate, LLC*, 303 B.R. 866, 871 (D. Colo. 2003) (citations

omitted).  As discussed above, Plaintiff's Complaint presents non-core issues based

in state law, and the Court is unable to identify an independent basis for federal

jurisdiction, satisfying the second, fifth, and sixth factors.  *See Compl.* [#1] at 4-6.

R. McCormick has previously filed an action in Weld County District Court, as

addressed in the fourth factor.  *Reply* [#42] at 7; *Weld Cnty. Compl.* [#42-2] at 9.

Regarding the first factor, the Court notes that the Bankruptcy Proceeding is already

pending in the Eastern District of Louisiana, and that it may be affected by a holding

in this case.  *CLS Resp.* [#34] at 2-3; *R. McCormick Interests Report* [#34-1].

Abstention in this case would thus further the interest of efficient administration of

that estate, as to do otherwise might delay, obstruct, or conflict with the

determination of the estate in that Bankruptcy Proceeding.  Concerning the tenth

factor, though the Court does not conclusively find that this is the case, the Court

notes that R. McCormick has already attempted to litigate similar claims in state

court and recognizes the possibility that Plaintiff's present Complaint is an attempt

to forum shop as an alter ego of R. McCormick.  *Weld Cnty. Compl.* [#42-2] at 9.

Lastly, the only party in the Bankruptcy Proceeding who is a party to the present case is Defendant CLS, whose Motion to Transfer Venue to the United States Bankruptcy Court for the District of Colorado was recently denied by the Bankruptcy Court of the Eastern District of Louisiana.  *See In re Robert S. McCormick*, No. 2:12-bk-13473, Dkt. No. 65 (Filed Apr. 8, 2013) and No. 118 (Filed June 6, 2013). This suggests to the Court that, though Defendant CLS's interests in the Court's determination here may be "related to" the Bankruptcy Proceeding and the value of the estate, the  Bankruptcy Court of the Eastern District of Louisiana is in a better position to determine the extent of Defendant CLS's interests.[5]

In consideration of these factors, even if Plaintiff had pled that R. McCormick, a member of Plaintiff, could have removed this action from state to federal court pursuant to 28 U.S.C. § 1452 had it been filed in state court initially, the circumstances would nonetheless weigh heavily in favor of discretionary abstention.

---

[5]   The Court notes that R. McCormick, partial owner of Plaintiff, vigorously opposed Defendant CLS's Motion to Transfer out of Louisiana.  The Court finds the following point made by R. McCormick noteworthy:

> "Effectively, the transfer of this case from Louisiana will impose undue and unnecessary costs and expenses that would be associated with frequent trips from Louisiana to Colorado for matters and hearings associated with McCormick's reorganization proceeding. At a distance of over 1,400 miles, which requires a full two-day drive, McCormick would effectively lose four days of every week in which he was required to be in Colorado, and a commensurate loss of four days of potential income desperately needed for funding his reorganizational efforts and eventual plan of repayment to actual creditors of this estate."

*In re Robert S. McCormick*, No. 2:12-bk-13473, Dkt. No. 112-1 (Filed May 28, 2013).  The Court also notes that R. McCormick's Motion for Extension of Debtor's Exclusive Time to File Plan of Reorganization, *id.* Dkt. No. 61 ¶1 (Filed Apr. 4, 2013), unlike Plaintiff's pleadings in this case, alleges subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a) and (b).  The Court thus suspects that, for these same reasons, the Eastern District of Louisiana is the proper venue for Plaintiff's current claims.

*Id.* at 2; *see  In re Bradlees Stores, Inc.*, 311 BR 29, 34 (S.D.N.Y. 2004) (noting that factors that courts consider when deciding whether to abstain pursuant to 28 U.S.C. § 1334(c) are virtually same as those considered in connection with motion to remand pursuant to 28 U.S.C. § 1452(b)); *In re Riverside Nursing Home*, 144 B.R. 951, 957 (S.D.N.Y.1992) ("[t]he equitable grounds that warrant a decision to remand under 28 U.S.C. § 1452(b) are similar to the factors that authorize abstention under 28 U.S.C. § 1334(c)."). Regardless, the above analysis regarding 28 U.S.C. § 1334 remains largely academic; the fact remains that Plaintiff has failed to sufficiently allege a basis for subject matter jurisdiction on *any* of the above grounds. "[T]he presumption is that [federal courts] lack jurisdiction unless and until a plaintiff pleads sufficient facts to establish it." *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994). A plaintiff is the master of his own complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Plaintiff makes no attempt, either in its Response or its Complaint, to establish subject matter jurisdiction pursuant to either 28 U.S.C. § 1334 or § 1452, and even goes so far as to explicitly note that it is not asserting jurisdiction on these grounds. *Resp.* [#36] at 2. Therefore, the Court declines to reach a conclusion regarding this possible basis for jurisdiction, as Plaintiff has declined to assert it.[6]

Accordingly, the Court **recommends** that the Motion [#21] be **granted**, and

---

[6] The Court analyzes this issue because it was suggested as grounds for jurisdiction in Defendant CLS's Response to the Motion, and because of the tangential connection to this statute via Plaintiff's reference to 28 U.S.C. § 1457 in Plaintiff's Response. *See CLS Resp.* [#34] at 1; *Resp.* [#36] at 2. The analysis is included to ensure that the Court provides a fully informed Recommendation to the District Court.

that Plaintiff's Complaint [#1] be **dismissed without prejudice** for lack of subject matter jurisdiction. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

**B.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(7) for Failure to Join Necessary and Indispensable Parties**

Alternatively, pursuant to Fed. R. Civ. P.12(b)(7), Defendants ask the Court to dismiss the Complaint for failure to join necessary and indispensable parties, including "all working interest owners, royalty interest owners and overriding interest owners in the leases issued after the 1951 Gillette lease expired." *Reply* [#42] at 6-7; *Motion* [#21] at 1-2.   Having already recommended dismissal on alternative grounds, the Court declines to address this argument.

**C.    The Joinder Motion**

With respect to the Joinder motion, Defendant Callisto seeks to join the Diamond Defendants' Motion and asserts no additional substantive arguments in support thereof.  Defendant Callisto's Joinder does not measurably affect the results of the above analysis.

**IV. Conclusion**

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that Defendants' Motion [#21] be **GRANTED**, and that Plaintiff's Complaint [#1] be **DISMISSED without prejudice**.

22

IT IS **FURTHER RECOMMENDED** that Defendant Callisto's Motion for Joinder [#31] be **GRANTED.**

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  June 17, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

23